# UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

OSWALDO JARIEL BONILLA,

Petitioner,

v.

UNITED STATES OF AMERICA,

Respondent.

Civil Action No. TDC-18-0375
Crim. Action No. TDC-16-0058

## MEMORANDUM OPINION

Oswaldo Jariel Bonilla has filed a Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 ("§ 2255 Motion"). In his Motion, Bonilla challenges his conviction in the underlying criminal action on the basis that his trial counsel acted in a constitutionally deficient manner during his discussions with Bonilla, during plea negotiations, and in failing to pursue certain evidence. Having reviewed the submitted materials, the Court finds that no hearing is necessary. *See* Rule 8(a), Rules Governing Section 2255 Proceedings for the United States District Courts; D. Md. Local R. 105.6. For the reasons set forth below, the Motion is DENIED.

## BACKGROUND

On February 22, 2016, a federal grand jury returned a four-count Indictment charging Bonilla with Conspiracy to Interfere with Interstate Commerce by Robbery ("Conspiracy to Commit Hobbs Act Robbery"), in violation of 18 U.S.C. § 1951(a) (Count One); Attempt to Interfere with Interstate Commerce by Robbery ("Attempted Hobbs Act Robbery"), in violation of 18 U.S.C. § 1951(a) (Count Two); Using, Carrying, and Discharging a Firearm During and in Relation to a Crime of Violence ("§ 924(c) charge"), in violation of 18 U.S.C. § 924(c) (Count

Three); and Possession of a Firearm by a Convicted Felon, in violation of 18 U.S.C. § 922(g) (Count Four). The Indictment issued after Bonilla and one other individual attempted to rob Alley Cat Towing, a business located in Hyattsville, Maryland.

According to a factual statement agreed to by Bonilla, on January 5, 2016, Bonilla, who was armed with a revolver, and a co-conspirator tried to sneak in through the back door of Alley Cat Towing but found it locked. The only employee inside, hearing noise outside of the back door, opened the door and looked outside. The employee managed to close and lock the back door before Bonilla and his co-conspirator could rush through. As the employee attempted to make a phone call for help, Bonilla ran around to the front door of Alley Cat Towing, kicked it in, and approached the employee, revolver raised. Bonilla pointed the revolver at the employee's head and demanded that the employee show him to the business's cash registers and safe. The employee told Bonilla that there were no cash registers or safes, but Bonilla refused to believe him, and, with the revolver still aimed at the employee's head, forced the employee to walk through the premises to find a safe, other valuables, and tools to break into a safe. As he marched the employee through the facility, Bonilla used his smart watch to tell his co-conspirator to enter through the front door. After Bonilla and the employee entered the main office, Bonilla saw his co-conspirator running away. At that point, Bonilla fled Alley Cat Towing as well, revolver still in hand.

Another employee of Alley Cat Towing, who was driving to work, spotted Bonilla and his co-conspirator in full flight and gave chase in his car. Still running and realizing he was being followed, Bonilla fired a shot with his revolver. Moments later, a police cruiser arrived with its emergency lights and sirens activated. Bonilla fired the revolver once more. More police descended on the scene and soon caught Bonilla trying to enter a residence a few blocks away. He

was arrested and taken to the Prince George's County Police Department ("PGPD") to be processed and questioned.

While in the custody of the PGPD, Bonilla made two efforts to conceal evidence of the crime. First, he swallowed two bullets. He soon became afraid that the bullets would discharge in his stomach, told officers that he had swallowed the bullets, and asked to be taken to a hospital. The police officers transported Bonilla to Prince George's County Community Hospital. There, x-rays showed that Bonilla had in fact swallowed two bullets. Bonilla then tried to conceal evidence for a second time. While at the hospital, Bonilla wrote a note on a tea bag to his girlfriend asking her to take all guns and ammunition out of his home. He gave the note to a nurse and requested that she pass along the message. The nurse instead gave the note to police officers.

The next day, a police search in the area where Bonilla had been arrested uncovered the revolver and the clothes Bonilla had worn during the attempted robbery of Alley Cat Towing. The revolver contained two spent rounds and several live rounds. Before the attempted robbery, Bonilla had been convicted of an offense carrying punishment of more than a year of imprisonment and was thus barred by federal law from possessing a firearm or ammunition.

After his indictment, Bonilla was appointed counsel on March 25, 2016, and his arraignment was held on March 28, 2016. On May 11, 2016, Bonilla's attorney, Assistant Federal Public Defender Michael CitaraManis ("Counsel"), filed six pretrial motions, in which he moved to dismiss Count Three of the Indictment, to suppress evidence obtained as a result of the police stop, to suppress statements made by Bonilla during his police interview, to suppress evidence obtained from Bonilla's smart watch–cell phone, to suppress a witness's identification of Bonilla, and for an extension of time to file a motion to suppress based on possible false statements in a search warrant affidavit pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978).

On July 16, 2016, Bonilla entered into a plea agreement in which he agreed to plead guilty to Counts One, Two, and Four of the Indictment and the Government agreed to dismiss Count Three. Count Three, the § 924(c) charge, carried a mandatory minimum ten-year sentence, to run consecutively to the sentences on any other counts of conviction. *See* 18 U.S.C. § 924(c)(1)(A)(iii) (2012). The parties agreed that the total offense level under the United States Sentencing Guidelines ("Guidelines") for the counts of conviction would be 28, including a seven-level enhancement for the discharge of a firearm under U.S.S.G. § 2B3.1(b)(2)(A), a two-level enhancement for obstruction of justice under U.S.S.G. § 3C1.1, a two-level enhancement for creating a substantial risk of death or serious bodily injury during flight from law enforcement under U.S.S.G. § 3C1.2, and a three-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1. The parties entered into the plea agreement pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), under which Bonilla would be permitted to withdraw his guilty plea if the Court did not agree to sentence him within the parties' agreed-upon sentencing range of 137 to 177 months of imprisonment "regardless of the applicable [United States Sentencing Guidelines] calculations." Plea Agreement ¶ 9, ECF No. 35; *see* Fed. R. Crim. P. 11(c)(1)(C).

The plea agreement stated the elements of Counts One, Two, and Four and confirmed that Bonilla understood that he had waived his right to a jury trial and to appeal his judgment and sentence if it was within the agreed-upon sentencing range. In signing the plea agreement, Bonilla attested that he had "read this agreement" and "carefully reviewed every part of it with my attorney." Plea Agreement at 8. His attorney made a comparable attestation. Bonilla further acknowledged that he voluntarily agreed to the plea agreement and was "completely satisfied with the representation of my attorney." *Id.*

On August 8, 2016, Bonilla pleaded guilty to Counts One, Two, and Four. On January 24, 2017, the Court sentenced Bonilla to 144 months of imprisonment on Counts One and Two and 120 months of imprisonment on Count Four, with the sentences to run concurrently. Upon the Government's motion, the Court dismissed Count Three. Bonilla did not file a direct appeal of his conviction and sentence. On February 5, 2018, he filed the pending Motion.

## DISCUSSION

In his Motion, Bonilla collaterally attacks his conviction based on his claim of ineffective assistance of counsel. The primary alleged deficiencies identified by Bonilla are his claims that his counsel (1) failed to file motions to dismiss and to suppress evidence and to conduct certain investigation; (2) failed to inform him of his right to a jury trial and to provide him with sufficient information to support a knowing and voluntary guilty plea; (3) forced him to sign the plea agreement against his best interests; and (4) failed to advise him that the terms of the plea agreement called for a sentence above the applicable Guidelines range. Bonilla asserted several other alleged deficiencies in his affidavit and reply brief.

## I.   Legal Standards

### A.   Section 2255 Motions

A prisoner in federal custody may move to vacate, set aside, or correct his sentence on the basis that: (1) "the sentence was imposed in violation of the Constitution or laws of the United States"; (2) the sentencing court lacked jurisdiction; (3) the sentence exceeded the maximum authorized by law; or (4) the sentence is "otherwise subject to collateral attack." 28 U.S.C. § 2255(a) (2012). The petitioner bears the burden of proof and must establish the claim by a preponderance of the evidence. *See Miller v. United States*, 261 F.2d 546, 547 (4th Cir. 1958). In § 2255 proceedings, "[u]nless the motion and the files and records of the case conclusively show

that the prisoner is entitled to no relief, the court shall ... grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto." 28 U.S.C. § 2255(b). A hearing is necessary where there are disputed issues of fact that need to be resolved in order for the court to rule on the motion. *See United States v. Witherspoon*, 231 F.3d 923, 927 (4th Cir. 2000). "If it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion." Rule 4(b), Rules Governing Section 2255 Proceedings for the United States District Courts. Moreover, absent extraordinary circumstances, a court may, "without holding an evidentiary hearing, dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements" made during a Rule 11 guilty plea colloquy, because such allegations are "'palpably incredible' and 'patently frivolous or false.'" *United States v. Lemaster*, 403 F.3d 216, 221–22 (4th Cir. 2005).

### B.    Ineffective Assistance of Counsel

The Sixth Amendment to the United States Constitution affords a criminal defendant the right to "Assistance of Counsel." U.S. Const. amend. VI. The United States Supreme Court has stated that "assistance which is ineffective in preserving fairness [of a trial] does not meet the constitutional mandate." *Mickens v. Taylor*, 535 U.S. 162, 166 (2002). A petitioner alleging ineffective assistance of counsel in violation of the Sixth Amendment must meet the standard established by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). Under this standard, the petitioner must show both deficient performance and prejudice—that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," *id.* at 687, and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id.* at 694. This

*Strickland* test applies when the petitioner alleges ineffective assistance in the context of plea negotiations and a guilty plea. *Hill v. Lockhart*, 474 U.S. 52, 58 (1985).

On the issue of whether counsel's performance was deficient, a court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. When evaluating an attorney's strategic decisions, the court should be "highly deferential" to the attorney's judgment and avoid hindsight. *Id.* at 689, 691. Counsel has the "duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Id.* at 691. However, while *Strickland* requires counsel to "conduct a reasonable investigation into potential defenses," it does not oblige counsel to "uncover every scrap of evidence that could conceivably help their client." *Green v. French*, 143 F.3d 865, 892 (4th Cir. 1998), *overruled on other grounds by Williams v. Taylor*, 529 U.S. 362 (2000). The court should keep in mind that "what the lawyer did not miss is 'just as (or more) important as what the lawyer missed'" in evaluating the effectiveness of counsel. *United States v. Roane*, 378 F.3d 382, 411 (4th Cir. 2004) (quoting *Coe v. Bell*, 161 F.3d 320, 342 (6th Cir. 1998)).

To meet the prejudice requirement when the petitioner has pleaded guilty, the petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59. If the petitioner alleges that his counsel was ineffective in failing "to investigate or discover potentially exculpatory evidence, the determination whether the error 'prejudiced' the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea," which, in turn, "will depend in large part on a prediction whether," based on an objective analysis, "the evidence likely would have changed the outcome of a trial." *Id.* at 59–60. A petitioner's statements in his briefs that he

would have chosen to go to trial absent allegedly ineffective assistance of counsel are not dispositive, since "a statement suffers from obvious credibility problems and must be evaluated in light of the circumstances the defendant would have faced at the time of his decision." *Hooper v. Garraghty*, 845 F.2d 471, 475 (4th Cir. 1988).

Even if an attorney performed deficiently in advising a defendant, the "defendant may be unable to show prejudice if at the Rule 11 proceeding the district court provides an admonishment that corrects the misadvice and the defendant expresses that he understands the admonishment." *United States v. Akinsade*, 686 F.3d 248, 253 (4th Cir. 2012); *see United States v. Swaby*, 855 F.3d 233, 240 (4th Cir. 2017). However, statements by the district court that are "general and equivocal," rather than a "careful explanation," would not cure the "affirmative misadvice" of counsel. *Akinsade*, 686 F.3d at 253.

## II.     Pretrial Motions and Investigation

Bonilla asserts that his counsel was ineffective because he failed to file "proper suppression and dismissal motions." § 2255 Mot. 4–5, ECF No. 58. Relatedly, Bonilla claims in his affidavit that his counsel was ineffective by not challenging the identification of Bonilla by a witness, evidence that a police canine followed his scent from the crime scene to where he was apprehended, and the lack of evidence connecting him to the clothing and gun recovered the next day, and by not requesting 911 call recordings and the results of gunshot residue tests. He attaches seven exhibits that he alleges are drafted motions and contends that they were never "actually filed, argued, or ruled on." Pet'r's Reply 3, ECF No. 69; *see* § 2255 Mot. Exs. 1–7, ECF No. 62-1 to ECF No. 62-7. Contrary to Bonilla's assertions, however, his counsel did file these motions. *Compare* § 2255 Mot. Exs. 1–7, *with* ECF Nos. 19, 24–29. For example, Bonilla's Exhibit 2, entitled "Motion to Dismiss Count Three of the Indictment," is the same document as the motion

filed on May 11, 2016 with the same title. *Compare* ECF No. 62-2, *with* ECF No. 24. On the same date, Bonilla's counsel filed a Motion to Suppress Evidence #1, ECF No. 25, which sought the exclusion of the gun and clothing; Motion to Suppress Statements, ECF No. 26; Motion to Suppress Evidence #2, ECF No. 27; and Motion to Suppress Out-of-Court Identification and Proposed In-Court Identification, ECF No. 28, which sought the exclusion of the witness identification. Thus, there was no constitutional deficiency arising from any alleged failure to file these motions to dismiss and to suppress evidence.

Although Bonilla's counsel did not pursue these motions to resolution, and instead negotiated the plea agreement that resulted in Bonilla's guilty plea, this decision did not constitute ineffective assistance of counsel. As discussed below, the Motion to Dismiss, which argued that the § 924(c) charge should be dismissed because the predicate offense of Attempted Hobbs Act Robbery is not a crime of violence, sought a result contrary to then-recent case law. *See infra* part III.C. Bonilla has not offered persuasive argument or evidence to support the conclusion that any evidence would have been excluded pursuant to the various motions to suppress. Even if the potentially challenged evidence were suppressed, and any unsought gunshot residue tests and 911 recordings proved unhelpful to the prosecution, the evidence against Bonilla included the facts that he was apprehended a few blocks from the scene of the crime soon after the second shot was fired as he was seeking to enter a residence, then swallowed two bullets while in police custody, which the police confirmed were in his stomach using x-rays. While in the hospital, Bonilla attempted to contact his girlfriend to ask her to dispose of all weapons and ammunition that were in his home. Bonilla also had two prior convictions for armed robbery, which likely would have been the subject of impeachment at trial if he chose to testify.

Under these circumstances, the decision by Bonilla's counsel to seek and recommend a guilty plea rather than pursue the motions to resolution was a matter of strategy to which this court should be deferential. *See Strickland*, 466 U.S. at 689, 691; *see also Roane*, 378 F.3d at 411; *Truesdale v. Moore*, 142 F.3d 749, 753–54 (4th Cir. 1998) (holding that counsel's performance satisfied the *Strickland* standard because counsel "pursued a reasonable strategy"); *Green*, 143 F.3d at 892 (stating that counsel is not required to "uncover every scrap of evidence that could conceivably help their client"). The strategy was particularly reasonable in light of the fact that the plea agreement negotiated by Bonilla's counsel resulted in the dismissal of the § 924(c) charge which carried a ten-year mandatory minimum sentence. Entering the guilty plea prior to resolution of the motions was reasonable because it allowed Bonilla to receive not just the two-point downward adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1(a), but also the additional one-level downward adjustment under U.S.S.G. § 3E1.1(b) for timely pleading guilty, only available upon a motion by the Government, which the U.S. Attorney's Office in this District typically makes only if it has not been required to litigate pretrial motions. Thus, the Court finds no deficient performance from counsel's strategic decision to pursue the plea agreement rather than pretrial motions for which there was no articulable prospect of success.

In addition to concluding that counsel's performance was not deficient, the Court also finds no prejudice, because there has been no showing that after pursuing the motions, counsel's recommendation to plead guilty would have been different, or that Bonilla would have chosen to go to trial. *See Hill*, 474 U.S. at 59; *Hooper*, 845 F.2d at 475–76; *see also Meyer v. Branker*, 506 F.3d 358, 369–70 (4th Cir. 2007). Where there was strong evidence against Bonilla regardless of the outcome of pretrial motions and additional investigation, and Bonilla would still have faced a potential ten-year consecutive sentence on the § 924(c) charge, there would still have been good

reason for Bonilla's attorney to recommend pleading guilty, and for Bonilla to make that choice given all of the circumstances. *See Hooper*, 845 F.2d at 475; *cf. United States v. Lewis*, 477 F. App'x 79, 82 (4th Cir. 2012) (holding that a defendant was prejudiced by counsel's misadvice where it "effectively negated his reason to plead guilty"). The Court thus finds no ineffective assistance of counsel relating to pretrial motions and investigation.

## III. Knowing and Voluntary Guilty Plea

Bonilla also argues that his counsel was constitutionally ineffective because he failed to properly advise him in advance of his guilty plea. In his § 2255 Motion, Bonilla specifically asserts that his counsel (1) failed to advise him that he had a right to a jury trial; (2) effectively forced him to plead guilty; and (3) failed to advise him that the plea agreement's agreed-upon sentencing range was above the Guidelines range. In his briefing on the Motion, Bonilla references additional arguments, including that (4) his counsel failed to advise him of the nature of the charges to which he was pleading guilty.

### A. Right to a Jury Trial

Bonilla asserts that his attorney was constitutionally ineffective by not discussing the case and plea agreement with Bonilla properly, including failing to explain that he had a right to a jury trial and the nature of that right, such that Bonilla was unable to make an intelligent decision between pleading guilty and going to trial. First, this claim must be dismissed because it is contradicted by his sworn testimony during the plea colloquy. *See Lemaster*, 403 F.3d at 221–22. When asked whether he had "fully discussed this charge and the case in general" with his attorney, Bonilla answered "Yes, sir." Plea Hr'g Tr. 6, ECF No. 66-1. Likewise, the plea agreement specifically states that the defendant had a constitutional right to a jury trial and other rights associated with a trial that he agreed to waive, *see* Plea Agreement ¶ 4, and Bonilla stated under

oath that he had an opportunity to read and discuss the plea agreement with his attorney and that he understood its terms. Since this claim "necessarily relies on allegations that contradict the sworn statements" in the plea colloquy, it must be dismissed. *Lemaster*, 403 F.3d at 221–22.

Even if his attorney had failed to explain the jury trial right to Bonilla, there was no prejudice to Bonilla because the Court fully informed him during the plea colloquy of the nature of that right and that he would be forfeiting that right. *See Swaby*, 855 F.3d at 240; *Akinsade*, 686 F.3d at 253. The Court explained that in pleading guilty, Bonilla would give up the right to a jury trial, which included the right to participate in the jury selection process, and that a jury could only convict him based on a unanimous verdict that the Government had proven his guilt beyond a reasonable doubt. The Court further informed Bonilla that by pleading guilty, he would be waiving other rights, including the right to the presumption of innocence, the right to confront witnesses, the right to present a defense, and the right against self-incrimination. Bonilla affirmed that he understood these rights and that he was voluntarily waiving each of them. Since Bonilla was fully informed by the Court of his right to a jury trial and other associated rights, and expressly waived them, there was no prejudice to him if his attorney did not fully explain them to him.

### B.     Coercion

Bonilla next asserts that his counsel was constitutionally ineffective because although Bonilla told his attorney that he "did not want the plea," his counsel told him that "trial was out of the question" and "forced" him to sign the plea. § 2255 Mot. 7. Again, this claim must be dismissed because it relies on assertions that are directly contradicted by his sworn testimony. During the plea colloquy, the Court asked Bonilla, "Has anyone threatened you in any way to persuade you to plead guilty in this case?" Plea Hr'g Tr. 22. Bonilla responded, "No, sir." *Id.* Furthermore, he told the Court that he was "fully satisfied" with his attorney's "representation and

advice in this case." *Id.* at 4. Since Bonilla's claim that he pleaded guilty because his attorney forced him to do so cannot be squared with his testimony under oath, it must be dismissed. *See Lemaster*, 403 F.3d at 221–22.

## C.   Guidelines Range

Bonilla alleges that his attorney was constitutionally ineffective because he failed to inform him that the range of the agreed-upon sentence specified in the plea agreement, 137–177 months of imprisonment, was higher than the applicable Guidelines range for the offenses to which he pleaded guilty. In the plea agreement, the parties agreed that the total offense level would be 28, which with the criminal history category of IV found by the Court at sentencing, resulted in a Guidelines range of 110–137 months of imprisonment. Because the stipulated sentencing range was above the applicable Guidelines range, Bonilla argues that his sentence was illegal and unconstitutional, and that his attorney was ineffective in not informing him of the discrepancy.

First, Bonilla is incorrect that the sentence was illegal and unconstitutional. The United States Sentencing Guidelines are advisory, not mandatory. *United States v. Booker*, 543 U.S. 220, 259 (2005). Both the sentencing range in the plea agreement of 137–177 months and the Court's sentence of 144 months are below the statutory maximum penalty of 20 years. 18 U.S.C. § 1951(a). Therefore, the sentencing range in the plea agreement, although outside the guideline range, was not illegal.

Second, there was nothing deficient about Bonilla's counsel recommending a plea agreement under which he would accept a sentence above the applicable Guidelines range. Under the circumstances, it may well have been the best strategy for Bonilla because the Government agreed to dismiss Count Three, using, carrying, or brandishing a firearm during and in relation to a crime of violence, which carries a mandatory minimum ten-year prison sentence to run

consecutive to the sentence on any other counts. *See* 18 U.S.C. § 924(c)(1)(A)(iii). Had Bonilla been convicted of the § 924(c) charge, the Guidelines range would have consisted of the mandatory 120 months on Count Three and, at best, 57–71 months on the other counts, for a minimum Guidelines range of 177–191 months. *See* U.S.S.G. § 2B3.1. Thus, agreeing to an above-Guidelines sentencing range on Counts One, Two, and Four in order to avoid the higher Guidelines range that would apply without the dismissal of Count Three was a sound legal strategy. *See Strickland*, 466 U.S. at 690–91; *Truesdale*, 142 F.3d at 754.

Although Bonilla argues in his reply brief that the § 924(c) charge in Count Three was not viable because neither of the potential predicate offenses of Conspiracy to Commit Hobbs Act Robbery and Attempted Hobbs Act Robbery are a "crime of violence" within the meaning of § 924(c), at the time of Bonilla's guilty plea there was a strong likelihood that Attempted Hobbs Act Robbery, the predicate offense referenced in Count Three, qualified as a "crime of violence" that could support a § 924(c) charge. Before Bonilla entered into the plea agreement with the government on July 16, 2016, the United States Court of Appeals for the Fourth Circuit had declined to reach the question of whether Hobbs Act robbery no longer qualified as a crime of violence for purposes of § 924(c) in light of *Johnson v. United States*, 135 S. Ct. 2551 (2015). *See United States v. Hare*, 820 F.3d 93, 105–06 (4th Cir. 2016). However, in June 2016, both the United States Court of Appeals for the Eleventh Circuit and the United States Court of Appeals for the Eighth Circuit held that Hobbs Act robbery could be a predicate crime of violence for a § 924(c) charge even after *Johnson*. *In re Fleur*, 824 F.3d 1337, 1341 (11th Cir. 2016); *United States v. House*, 825 F.3d 381, 387 (8th Cir. 2016). The United States Court of Appeals for the Ninth Circuit reached the same conclusion in an unpublished decision issued in May 2016. *United*

*States v. Howard*, 650 F. App'x 466, 468 (9th Cir. 2016) (citing *United States v. Selfa*, 918 F.2d 749 (9th Cir. 1990)).

Since § 924(c) includes within the meaning of a "crime of violence" felonies with the element of "*attempted* use[,] or threatened use of physical force against the person or property of another," 18 U.S.C. § 924(c)(3)(A) (emphasis added), it was reasonable for Bonilla's counsel to conclude that Attempted Hobbs Act Robbery, like a completed Hobbs Act robbery, could stand as the predicate offense for the § 924(c) charge. Indeed, in 2018, the Eleventh Circuit so held. *See United States v. St. Hubert*, 909 F.3d 335, 351 (11th Cir. 2018). As a result, it was a reasonable strategy, and thus not deficient performance, for Bonilla's attorney to recommend accepting a plea deal that dismissed the § 924(c) charge in Count Three in exchange for a sentence above the Guidelines range on the remaining charges in order to avoid the risk that Bonilla would be exposed to a consecutive ten-year term of imprisonment, and higher overall Guidelines range, if he proceeded to trial and lost.

Even if Bonilla's counsel did not explain to Bonilla that the agreed-upon sentencing range in the plea agreement was higher than the Guidelines range on the undismissed counts, such an omission would not have resulted in prejudice to Bonilla because the Court effectively informed him of this fact. During the plea colloquy, the Government stated, and Bonilla acknowledged that he understood, that the parties had agreed in the plea agreement to a sentencing range of 137–177 months, and that the total offense level would be 28. The Court then informed Bonilla that, based on the offense level of 28, the Guidelines range would be somewhere between 78–97 months and 140–175 months, depending on his criminal history category. Bonilla acknowledged that he understood that "those are the ranges of recommended sentence that the guidelines would recommend based on the Plea Agreement." Plea Hr'g Tr. 18. Thus, Bonilla was informed that

the agreed-upon sentencing range of 137–177 months could be higher than the applicable Guidelines range. Accordingly, there was no prejudice to Bonilla if his attorney failed to advise him of this point. *See Swaby*, 855 F.3d at 240; *Akinsade*, 686 F.3d at 253.

In a related argument, Bonilla claims in his reply brief that his counsel was constitutionally ineffective because he did not explain that even though Count Three was dismissed, Bonilla "would still receive a 7 level increase in his offense, effectively taking away the three points for acceptance of responsibility and adding 4 addition[al] points for dismissed conduct." Pet'r's Reply 3. This issue appears to be the basis of Bonilla's related allegation that his attorney was constitutionally ineffective because the pretrial motions "were then used against petitioner with the prosecutor enhancing on a count that should have been dismissed." § 2255 Mot. 4. Bonilla's assertion, however, is contradicted by his testimony during the plea colloquy, which establishes that Bonilla was aware that this enhancement would still apply. In the plea agreement, the parties agreed upon and stipulated to the seven-level increase to the base offense level because Bonilla discharged a firearm during the commission of the offense. Under oath, Bonilla answered "yes, sir," when the Court asked, "Did you have the opportunity to read and discuss this plea agreement with your attorney before you signed it?" and "Do you understand the terms of this plea agreement?" Plea Hr'g Tr. 11–12. Furthermore, when the Government summarized the terms of the plea agreement relating to the Guidelines calculation during the plea hearing, it specifically mentioned this seven-level increase for discharging a firearm. After hearing the Government's summary, Bonilla stated that he understood the calculations to which he had agreed. Since the claim that Bonilla was never informed that this enhancement would apply is directly contradicted by Bonilla's testimony at the plea hearing, it must be dismissed. *See Lemaster*, 403 F.3d at 221–22. To the extent he could still argue that his attorney did not adequately explain to him before

16

the plea hearing that it would apply, the plea colloquy explicitly informed him of that fact, such that any deficient performance did not result in prejudice. *See Swaby*, 855 F.3d at 240; *Akinsade*, 686 F.3d at 253.

## D. Nature of the Charges

In his reply brief, Bonilla argues that his counsel was constitutionally ineffective because he never informed Bonilla that "he was pleading guilty to robbery under a conspiracy statute," that he could not have been convicted of robbery because the offense of conviction, 18 U.S.C. § 1951(a), "was only a conspiracy statute," and that as a result, the guilty plea to robbery under Count Two was invalid. Pet'r's Reply 2. Bonilla therefore alleges that his attorney was constitutionally ineffective for allowing him to plead guilty under these circumstances.

Bonilla's arguments fail because they misstate the nature of the charges to which he pleaded guilty. The Indictment charged Bonilla in Count One with Conspiracy to Commit Hobbs Act Robbery and in Count Two with Attempted Hobbs Act Robbery, both in violation of 18 U.S.C. § 1951(a). Section 1951(a) provides that: "Whoever in any way or degree obstructs, delays, or affects commerce . . . by robbery or extortion or attempts or conspires so to do" is guilty of the offense. 18 U.S.C. § 1951(a). Thus, although § 1951(a) criminalizes robbery, it also prohibits conspiracy to commit robbery and attempted robbery. Here, the Indictment specifically charged the conspiracy and attempt forms of this offense in Counts One and Two, respectively. By pleading guilty to these counts, Bonilla pleaded guilty not to a completed robbery, but to Conspiracy to Interfere with Interstate Commerce by Robbery and Attempt to Interfere with Interstate Commerce by Robbery. *See* Judgment 1, ECF No. 53. The Court therefore finds no ineffective assistance of counsel for failing to inform Bonilla that he was pleading guilty to robbery or for allowing Bonilla to plead guilty to robbery.

Furthermore, Bonilla's claim that his counsel did not properly inform him of the nature of the charges must fail because it is contradicted by his sworn testimony during the plea colloquy. After specifically informing Bonilla that he was charged with conspiracy in Count One and attempt in Count Two, the Court asked Bonilla, "Have you fully discussed this charge and the case in general with your attorney?" and "And do you understand the charges against you?" Plea Hr'g Tr. 5–6. Bonilla answered yes to both questions. Likewise, where the plea agreement specifically states that the charges to which Bonilla would plead guilty were Conspiracy to Interfere with Interstate Commerce by Robbery and Attempt to Interfere with Interstate Commerce by Robbery, Bonilla's claim that his attorney did not inform him of the charges is contradicted by his responses to questions by the Court. When the Court asked, "did you have the opportunity to read and discuss this plea agreement with your attorney before you signed it?" and "Do you understand the terms of this plea agreement?" Bonilla responded "yes, sir." *Id.* at 11–12. Because his claim that he was not properly informed of the charges relies on statements that run contrary to his sworn statements, it necessarily fails. *See Lemaster*, 403 F.3d at 221–22.

Finally, even if Bonilla could establish that his counsel had not adequately explained the nature of the charges to which he was pleading guilty, there was no prejudice to him because the Court specifically informed him of the nature of the charges during the Rule 11 plea colloquy. The Court listed the elements of each of the counts to which Bonilla intended to plead guilty, and Bonilla stated that he understood the elements that the Government would have to prove at trial. Thus, even if Bonilla's attorney had misadvised Bonilla of the charges against him, there was no prejudice because the Court adequately informed him of the charges to which he pleaded guilty. *See Swaby*, 855 F.3d at 240; *Akinsade*, 686 F.3d at 253.

## IV. Additional Claims

In his briefing, Bonilla asserts additional arguments for relief not directly set forth in his Motion. In his reply brief, Bonilla argues that Count Three, which charged him with using, carrying, and discharging a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c), must be dismissed because Conspiracy to Commit Hobbs Act robbery is not categorically a "crime of violence" for purposes of § 924(c). As discussed above, the predicate offense underlying the § 924(c) charge was Attempted Hobbs Act Robbery, not conspiracy, and at least one United States Court of Appeals has held that it remains a proper predicate offense for such a charge. *See supra* part III.C. More importantly, the § 924(c) charge was, in fact, dismissed at sentencing pursuant to the plea agreement. Because he is not imprisoned pursuant to that charge, there is no basis for Bonilla to argue that any deficiency with respect to the original § 924(c) charge renders his imprisonment improper.

Bonilla also asserts in his affidavit that his counsel was ineffective for failing to challenge the sentencing enhancements for obstruction of justice and reckless endangerment during flight. Where facts supporting a sentencing enhancement are contained in the statement of facts agreed to pursuant to a plea agreement, it is not error for defense counsel to fail to object to the enhancement. *See United States v. Pollard*, 139 F.3d 895, 1998 WL 166337, at *1 (4th Cir. 1998) (unpublished). In *Pollard*, there was no ineffective assistance of counsel for failing to object to a sentencing enhancement for a leadership role where, in the plea agreement, the defendant had agreed that he had acted as a leader in a drug conspiracy, and the statement of facts reflected that he had a position of responsibility in the drug organization. *Id.* Here, the parties agreed in the plea agreement to increases to the base offense level premised on Bonilla's obstruction of justice and creation of risk to others during flight. The agreed-upon statement of facts provided that Bonilla

twice fired his revolver as he fled Alley Cat Towing and was pursued by both an Alley Cat Towing employee and police officers, and that he attempted to instruct his girlfriend to remove all weapons and ammunition from his home. These facts clearly establish that Bonilla engaged in activity amounting to obstruction of justice and reckless endangerment during flight. *See* U.S.S.G. §§ 3C1.1, 3C1.2. Therefore, defense counsel's failure to object to those enhancements during sentencing was not ineffective assistance of counsel.

Bonilla also briefly asserts in his reply brief that his counsel was constitutionally ineffective because he "filed a sentencing memorandum outlining Petitioner's mental and physical condition but never order[ed] a competency test or hearing." Pet'r's Reply 3. Due process requires that "[a] person whose mental condition is such that he lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense may not be subjected to a trial." *Drope v. Missouri*, 420 U.S. 162, 171 (1975). In the context of a claim that a petitioner was not competent to plead guilty, the court should evaluate the plea colloquy to determine whether the petitioner's answers "reflect 'a sophisticated understanding of the proceeding.'" *Walton v. Angelone*, 321 F.3d 442, 460 (4th Cir. 2003) (quoting *Burket v. Angelone*, 208 F.3d 172, 192 (4th Cir. 2000)). When a petitioner argues that his counsel was ineffective for failing to raise the issue of competency, the *Strickland* standard applies. *Id.* at 461.

To the extent that Bonilla is arguing that defense counsel was ineffective because the attorney knew Bonilla was not competent to plead guilty because of mental illness yet advised and permitted him to do so, such a claim would fail based on Bonilla's sworn statements before the Court and the Court's assessment of him during the plea colloquy. *See Lemaster*, 403 F.3d at 221–22. Under oath, Bonilla informed the Court that he took psychiatric medication, and when asked if that medication had "any impact on [his] ability to understand today's proceeding," he told the

Court, "No, sir." Plea Hr'g Tr. 4. He also acknowledged that his psychiatric medication did not "impact [his] ability to make decisions about [his] future." *Id.* Notably, at the conclusion of the plea colloquy, the Court, having observed and listened to Bonilla, found that he was "fully competent and capable of entering an informed plea," that he was "aware of the nature of the charges and the consequences of a plea, and that the plea of guilty is a knowing and voluntary plea supported by an independent basis in fact." *Id.* at 28–29.

Moreover, Bonilla has made no claim, and has not shown, that he would have been found incompetent had an evaluation been requested by counsel prior to his guilty plea. Rather, a review of the report by the forensic psychologist retained by defense counsel to evaluate Bonilla for purposes of the sentencing hearing reveals no reason to conclude that he was not competent to stand trial or plead guilty. Although not specifically asked to evaluate that question, the forensic psychologist noted that Bonilla "is considered responsible for his behavior." Forensic Eval. 3, Def.'s Sentencing Mem. Ex. I, ECF No. 44-9. Therefore, the Court finds that counsel did not provide ineffective assistance in failing to request a competency hearing before Bonilla pleaded guilty.

Bonilla also states in his affidavit that his counsel was constitutionally deficient because he did not thoroughly review discovery and lacked knowledge of the case due to his other obligations. "[V]ague and conclusory allegations contained in a § 2255 petition may be disposed of without further investigation by the District Court." *United States v. Dyess*, 730 F.3d 354, 359 (4th Cir. 2013) (quoting *United States v. Thomas*, 221 F.3d 430, 437 (3d Cir. 2000)). In *Dyess*, where the petitioner's motion included 25 claims "which consisted of a single sentence with no further explanation or factual development," the court affirmed the dismissal of those claims on the grounds that the allegations were vague and conclusory. *Id.* at 359–60. Here, Bonilla's claim

21

that his attorney did not thoroughly review discovery is completely without supporting facts or other explanation and will thus be dismissed on this basis. *See id.*

## V. Cumulative Error

Finally, Bonilla argues that taken together, the various alleged errors by counsel cumulatively establish ineffective assistance of counsel. In the Fourth Circuit, however, "ineffective assistance of counsel claims, like claims of trial court error, must be reviewed individually, rather than collectively." *Fisher v. Angelone*, 163 F.3d 835, 852 (4th Cir. 1998). When the alleged errors individually do not constitute ineffective assistance of counsel, they cannot cumulatively establish constitutional error. *Id.* at 852–53. Nevertheless, if the district court reviews each claimed error only for prejudice and does not evaluate the claims on the merits, a defendant could cumulatively show prejudice. *See United States v. Russell*, 34 F. App'x 927, 927–28 (4th Cir. 2002). Here, the Court has either summarily dismissed or found no deficient performance for the vast majority of Bonilla's ineffective assistance claims. There can be no cumulative ineffective assistance based on these claims. *See Fisher*, 163 F.3d at 852. Upon consideration of the claims for which the Court analyzed only the issue prejudice, the Court concludes that the cumulative effect of those acts or omissions do not establish prejudice under *Strickland. Cf. Russell*, 34 F. App'x at 927–28.

## VI. Certificate of Appealability

Bonilla has no absolute entitlement to appeal a district court's denial of the Motion. *See* 28 U.S.C. § 2253(c)(1)(B). To appeal this Court's denial of the Motion, Bonilla must obtain a certificate of appealability ("COA"). *Id.* A COA may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." *Id.* § 2253(c)(2). When a district court dismisses a Motion to Vacate solely on procedural grounds, a prisoner must demonstrate both "(1)

'that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right' and (2) 'that jurists of reason would find it debatable whether the district court was correct in its procedural ruling'" in order to be entitled to a COA. *Rose v. Lee*, 252 F.3d 676, 684 (4th Cir. 2001) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). When a district court reaches the merits, as it has here, a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Because Bonilla has made no such showing, this Court will not issue a COA. Although this Court declines to issue a COA, Curtin may still seek a COA from the Fourth Circuit. *See* Fed. R. App. P. 22(b)(1) (stating that if a district judge denies a COA, a petitioner "may request a circuit judge to issue it").

## CONCLUSION

For the foregoing reasons, Bonilla's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 is DENIED. The Court declines to issue a certificate of appealability. A separate Order shall issue.

Date: January 14, 2019

THEODORE D. CHUANG
United States District Judge